IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, and WEST VIRGINIA.
HIGHLANDS CONSERVANCY, INC.
        Plaintiffs,                                  Civil Action No. 3:07-0413
                                                         Hon. Robert C. Chambers, Jr.
     v.

APOGEE COAL COMPANY, LLC

        Defendant.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT APOGEE COAL COMPANY, LLC, SHOULD NOT BE FOUND IN CIVIL CONTEMPT AND MOTION TO ENFORCE CONSENT DECREE**

INTRODUCTION

       Despite years of indulgence, Defendant Apogee Coal Company, LLC ("Apogee") still refuses to comply with its selenium limits. Apogee's obfuscation and excuses haves gone on for too long:  first in response to the November 2007 deadline by which it was to submit a treatment plan to the West Virginia Department of Environmental Protection, then in response to the Court's May 27, 2008 order, once again in response to the Court's July 7, 2008 and August 13, 2008 Orders, and now in response to the March 11, 2009 Consent Decree that it voluntarily negotiated and agreed to.

       The Consent Decree in this action gave Apogee more than one year, until April 5, 2010, to achieve compliance with its selenium limits.  Apogee squandered that time and asks again to be allowed to delay its compliance date indefinitely.  Plaintiffs now ask the Court to hold Apogee in civil contempt and impose the following sanctions in order to enforce the Consent Decree:  (1) a per diem fine of sufficient quantity per day until Apogee purges itself of its

existing contempt, (2) a suspended fine purgeable if Apogee remedies the deficiencies in its status reports by a date certain, and (3) an award to Plaintiffs of their attorney's fees for this contempt proceeding and their opposition to Apogee's motion to delay the compliance deadline.

## LEGAL STANDARD

"Civil contempt is designed to force the contemnor to comply with an order of the court." Willy v. Coastal Corp., 503 U.S. 131, 139 (1992).  To establish Defendant's civil contempt, Plaintiffs must establish each of the following four elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree and had knowledge (at least constructive) of such violations and (4) that [the] movant suffered harm as a result.

JTH Tax, Inc. v. H & R Block Eastern Tax Servs., Inc., 359 F.3d 699, 705 (4th Cir. 2004) (quoting Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000), internal citations omitted, ellipses in JTH Tax).

This Court has previously explained that "[t]he remedy for civil contempt is within the Court's broad discretion."  Better Gov't Bureau, Inc. v. McGraw, 924 F. Supp. 729, 734 (S.D. W. Va. 1996), rev'd on other grounds by In re Allen, 106 F.3d 582 (4th Cir. 1997).  The United States Court of Appeals for the Fourth Circuit has held that "[a] court may impose sanctions for civil contempt 'to coerce obedience to a court order to or to compensate the complainant for losses sustained as a result of the contumacy.'"  Cromer v. Kraft Foods N. Amer., Inc., 390 F.3d 812, 821 (4th Cir. 2004) (quoting in re General Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995)). Such sanctions may include coercive imprisonment, per diem fines for continuing disobedience, and suspended fines purgeable through timely compliance with a final order.  International Union, United Mine Workers of Amer. V. Bagwell, 512 U.S. 821, 829-30 (1994).  The sanction

must be sufficient to "concentrate the mind" of the contemnor.  Taylor v. Home Ins. Co., 646 F. Supp. 923, 930 (W.D.N.C. 1986).

### A.     Valid Decree of Which Apogee Had Actual Knowledge

Without doubt, Apogee had actual knowledge of the Consent Decree in this action. Indeed, it voluntarily negotiated the Consent Decree's terms, agreed to the Consent Decree through its attorney's signature, and lodged the Consent Decree with the Court.

### B.     The Relevant Decree Was in Plaintiffs' Favor

The Consent Decree was in Plaintiffs' favor.  It modified the permanent injunction that the Court issued at Plaintiffs' request when the Court granted Plaintiffs' motion for partial summary judgment.  Doc. # 92 at ¶ 21.a.  The Decree required Apogee to change its conduct by taking corrective actions by designated deadlines to redress the ongoing permit violations alleged in Plaintiffs' Complaint.

### C.     Apogee Is in Violation of the Decree and Is Aware of Its Violations

Apogee is in violation of the Consent Decree in this action in two critical respects.  First, Apogee is violation of Paragraph 21.a, which provides:

> Defendant Apogee Coal Company, LLC, is **ORDERED** to comply with its selenium effluent limitations on Outfalls 001, 002, and 003 of WV/NPDES Permit Number WV1013599 no later than April 5, 2010.

Doc. # 142 at 6.  Second, Apogee is in violation of Paragraph 21.b, which requires Apogee to submit status reports on various dates that

> shall contain all relevant information on Patriot Coal Corporation's installation of pilot treatment projects, its evaluation of various treatment technologies at the facilities at issue in Civil Action Numbers 3:07-cv-00413 and 3:08-cv-0088, and its other efforts to comply with its selenium limits at its coal mining operations, including . . . .
>
>> i. The operational status of treatment equipment using zerovalent iron in either a steel wool or steel foam format, including a description of installed equipment,

dates of operation, sampling results, influent selenium concentration, effluent selenium concentration at the point of discharge into receiving waters, selenium removal efficiency, and an analysis of any operational problems with the units and the degree of success in resolving those problems.

Id.

### 1. Apogee Is In Contempt For Continuing To Violate Its Selenium Limits

Apogee admits that it has failed to take the necessary measures to achieve compliance with its selenium limits. In its "Final Status Report," Apogee admits that "less than the entire flow of water at Outfalls 001, 002, and 003 of WV/NPDES Permit Number WV1013599 is treated to reduce selenium" and that "it has reported selenium in excess of the permitted effluent limits in its monthly discharge monitoring reports." Doc. # 155. Moreover, Apogee has filed a motion in this Court seeking to modify the compliance deadline of April 5, 2010, asserting that it "cannot comply with Paragraph 21.a." Doc. # 150 at 1.

In its April 12, 2010 Final Status Report, Apogee failed to include any sampling results for selenium monitoring that it had conducted since its March 15, 2010 Status Report. Doc. # 155. But despite the absence of hard data from April 2010 regarding Apogee's selenium discharges, the Court can infer from Apogee's consistent violations of the selenium limits on Outfalls 001, 002, and 003 of WV/NPDES Permit WV1013599 prior to April 5, 2010, and from Apogee's admission that it has not installed sufficient treatment, that Apogee's violations continue to the present time. Figures 1 and 2 below, created from data in Apogee's March 15, 2010 Status Report, shows that Apogee's recent selenium discharges have greatly exceeded both its monthly average and daily maximum limits.[1] Based on its status reports, it is clear that

---

[1] The data supporting the chart in Figures 1 and 2 were attached to Plaintiffs' response to Apogee's motion to modify the consent order. See Doc. # 154-1. Apogee has not provided Plaintiffs with any information regarding selenium concentrations from Outfalls 001 and 002 after January 29, 2010, or from Outfall 003 after March 3, 2010.

*FIGURE 1*



*FIGURE 2*



Apogee has taken no action that will result in a reduction of its selenium discharges to lawful concentrations. Consequently, Apogee is in contempt of this Court's order requiring compliance with the selenium limits on Outfalls 001, 002, and 003 of WV/NPDES Permit WV1013599 no later than April 5, 2010.

### 2. Apogee's Status Reports Are Deficient

The Consent Decree required Apogee to submit detailed status reports on June 15, 2009, September 15, 2009, December 15, 2009, March 15, 2010, and April 12, 2010. Although Apogee submitted reports on or about each of those dates, those reports were lacking in sufficient detail to comply with the Consent Decree. Specifically, Apogee has failed to report (1) selenium monitoring data for Outfalls 001, 002, and 003 of WV/NPDES Permit WV1013599 generated after the submission of the March 15, 2010 Status Report, (2) information regarding the dates of installation and operation and performance of the zero-valent iron ("ZVI") system that Apogee asserts it has installed at Outfall 002 of WV/NPDES Permit WV1013599, (3) information regarding the dates of installation and operation and performance of the ZVI system that Apogee asserts it has installed at Outfall 001 of WV/NPDES Permit WV1013599, and (4) information regarding Patriot Coal Corporation's efforts to comply with selenium limits at its other surface mining operations.

The Consent Decree requires Apogee to report its selenium sampling results related to its ZVI systems. Apogee represents in its Final Status Report that it "has installed treatment consisting of zero-valent (ZVI) systems at Outfalls 001, 002 and 003 of Apogee's WV/NDPES Permit Number WV1013599." The Final Status Report, however, does not include a single selenium sampling result. Without such data, neither Plaintiffs nor the Court can evaluate Apogee's performance. If Apogee has not conducted any selenium monitoring at those outfalls

since its March 15, 2010 Status Report, then it should have stated that in its Final Status Report.

The Consent Decree also requires Apogee to include in its status reports "[t]he operational status of treatment equipment using zero-valent iron in either a steel wool or steel foam format, including a description of installed equipment, dates of operation, . . . and an analysis of any operational problems with the units and the degree of success in resolving those problems." Doc. # 142 at ¶ 21.b.i. As noted above, Apogee asserts that it has installed a ZVI treatment system at Outfall 002 of WV/NPDES Permit WV1013599 and that the system is not treating the entire flow of water at Outfall 002, but does not provide any additional detail regarding the system. Doc. # 155 at 1. Presumably, Apogee is referring to the steel foam pilot system described in Apogee's December 15, 2009 Status Report. Doc. # 147 at ¶ 9. According to Liberty's proposal for the eight-tank system, it is a pilot project capable of treating only 30 gallons per minute. Doc. # 144-5. Apogee's status reports provide no other detail about the status of the pilot system proposed for installation in January 2010. Indeed, both the March 15, 2010 Status Report and the Final Status Report are silent regarding the operational status of the project that was scheduled for installation in January 2010. Doc. Nos. 153 and 155. Consequently, Apogee has failed to fully comply with Paragraph 21.b.i of the Consent Decree with regard to ZVI treatment at Outfall 002 of WV/NPDES Permit WV1013599.

Similarly, Apogee has failed to fully comply with its reporting obligations under the Consent Decree with regard to Outfall 001 of WV/NPDES WV1013599. In its Final Status Report, Apogee asserts for the first time that it has installed some form of a ZVI system on part of the flow on Outfall 001. Doc. # 155 at 1. If that is so, then Apogee has failed to properly report on that system because none of its previous status reports mention such a system. It is impossible to determine from Apogee's status reports even basic information regarding the ZVI

system at Outfall 001, such as whether it uses steel wool or steel foam, the number of units installed, the design of the units, et cetera.  Consequently, Apogee is in contempt of the Consent Decree's requirement to report on the status of ZVI systems at each outfall.

Finally, the Consent Decree requires Apogee to report on its parent company's efforts to comply with selenium limits at other surface mining operations.  Doc. # 142 at ¶ 21.b ("The status reports shall contain all relevant information on Patriot Coal Corporation's . . . other efforts to comply with its selenium limits at its coal mining operations . . . .").  Apogee's status reports provided information regarding the permits at issue in Civil Action Nos. 3:07-cv-00413 and 3:08-cv-0088.  Plaintiffs have recently determined that Patriot Coal Corporation has attempted, but failed, to reduce its selenium discharges at other surface mining operations using ZVI.

Patriot Coal Corporation's subsidiary Catenary Coal Company, LLC ("Catenary") applied for extensions of selenium compliance schedules for two of its WV/NPDES Permits—WV0096962 and WV1014684.[2]  In the Rationale Page that the West Virginia Department of Environmental Protection ("WVDEP") created to accompany the draft modification in response to Catenary's request regarding WV/NPDES Permit WV0096962, WVDEP stated that

> [s]elenium treatment facilities have been installed (pilot scale, etc.) at outlets 055 and 056.  Site preparation and/or grading plan design has commenced for construction of treatment systems at outlets 042 and 044.  These pilot scale installations have been utilized to evaluate the reagent effectiveness for the site-specific water chemistry and in particular, iron reaction through the system.

Ps' Ex. 3 at 2.  In the Rationale Page for the draft modification to WV/NPDES Permit WV1014684, WVDEP stated that "[s]elenium treatment facilities have been installed (pilot

---

[2] On March 31, 2010, EPA objected to those selenium compliance schedule extensions because of, among other things, its "significant concern whether [ZVI] technologies have the capability to treat selenium successfully in discharges from mining operations in West Virginia." Ps' Ex. 1 & 2.

8

scale, etc.) at outlets 003 and 006. These pilot scale installations have been utilized to evaluate the reagent effectiveness for the site-specific water chemistry and in particular, iron reaction through the system." Ps's Ex. 4 at 2. The Rationale Pages for both documents state that "[o]n-going monitoring of the installed treatment facilities has not provided evidence that the proscribed method of treatment will yield a consistent and dependable reduction in selenium concentrations as suggested by the pilot scale systems." Ps' Ex. 3 at 2; Ps' Ex. 4 at 2.

Similarly, Apogee itself applied for an extension of a selenium compliance schedule for a facility adjacent to the mining operation at issue in this action—WV/NPDES Permit WV0099520. [3] In its application, Apogee stated that "[s]elenium treatment facilities have been installed (pilot scale) at outlet 001. Pilot scale system is a 6-tank battery, utilizing zero-valent iron as reagent. Facility is monitored and supported by Global Materials Technology (GMT)." Ps' Ex. 6. Apogee also admits that "[o]n-going monitoring of the installed treatment facilities has not provided evidence that the proscribed method of treatment will yield a consistent and dependable reduction in selenium concentrations as suggested by the pilot scale systems." Id.

Apogee's status reports in this action have never mentioned its own or its sister company Catenary's efforts with ZVI at other facilities, notwithstanding its obligation to report on those efforts under Paragraph 21.b of the Consent Decree. Apogee and WVDEP have apparently concluded, based on those ZVI systems, that ZVI is neither consistent nor dependable, but Apogee has not reported those conclusions, or the data on which they are based, to Plaintiffs or to this Court. Consequently, Apogee is in contempt of the requirements of Paragraph 21.b with regard to Patriot Coal Corporation's selenium treatment experiments.

---

[3] On March 31, 2010, EPA objected to that selenium compliance schedule extension because of, among other things, its "significant concern whether [ZVI] technologies have the capability to treat selenium successfully in discharges from mining operations in West Virginia." Ps' Ex. 5.

In short, Apogee is in contempt for its violations of Paragraphs 21.a and 21.b of the Consent Decree. Apogee failed to achieve compliance with its selenium limits by April 5, 2010, or even to install a treatment system proven to do so, such as VSEP or ABMet. Moreover, Apogee has failed to provide all the information required in its status reports. Apogee's knowledge of those violations is shown by its own admissions.

### D. Apogee's Contumacy Harms Plaintiffs

Plaintiffs are harmed by Apogee's contempt. Apogee's failure to comply with its selenium limits is causing continuing harm to the environment and, consequently, Plaintiffs' interests in Rum Creek. See Doc. # 67 ("Plaintiffs have reasonable fears that selenium discharges [into Rum Creek] in excess of an applicable permit limits may result in the type of pollution which affects aquatic life and in turn causes injury to those who enjoy and appreciate it.") An NPDES effluent limitation is "precisely that part of the [Act] which is foremost concerned with furthering the 'underlying substantive policy' of the environmental law: the preservation of the environment and the protection of mankind and wildlife from harmful chemicals." PIRG v. Top Notch Metal Finishing Co., 26 ERC 2012, 2015 (D.N.J. 1987). Since discharge standards "are at the heart of the Clean Water Act," violations of those standards "directly and critically upset the Act's objective: i.e., 'to restore and maintain the integrity of the chemical, physical, and biological integrity of the Nation's waters,' 33 U.S.C. § 1251(a)." International Union v. Amerace Corp., Inc., 740 F. Supp. 1072, 1086 (D.N.J. 1990). "[T]he fact that defendant violated its permit by discharging more pollutants than authorized means that the restoration and enhancement of the river's water quality was inhibited and therefore, the objective of the Act was frustrated." PIRG v. Powell Duffryn Terminals, Inc., 720 F. Supp. 1158, 1167 (D.N.J. 1989).

Selenium is a toxic pollutant. In its recent proposed determination to veto the Spruce No. 1 mine, EPA explained that

> Adverse impacts of increased levels of selenium include birth defects in fish and other aquatic life and can also result in toxic effects to embryos, resulting in abnormal development or death for those organisms. For aquatic animals, the concentration range between essential and toxic is very narrow, being only a few micrograms per liter in water. As described above, selenium toxicity is primarily manifested as reproductive impairment due to maternal transfer, resulting in embryotoxicity (embryonic death) and teratogenicity (birth defects) in egglaying vertebrates. The most sensitive toxicity endpoints in fish larvae are teratogenic deformities such as skeletal, craniofacial, and fin deformities, and various forms of edema. Embryo mortality and severe development abnormalities can result in impaired recruitment of individuals into populations. WVDEP has also studied fish larval deformity rates and selenium concentrations within fish eggs, although not in the vicinity of the Spruce No. 1 project area. This draft study indicates that elevated selenium concentrations in fish eggs, increased larval deformity rates and increased deformity rates in mature fish were all associated with elevated water column selenium, indicating unacceptable adverse effects on fisheries.

75 Fed. Reg. 16,788, 16,801 (April 2, 2010). As leading selenium expert Dennis Lemly has explained, "Case studies show that if waterborne selenium reaches 10 ug/L, complete reproductive failure can occur in reservoirs, and reproduction may be reduced by 40% in streams (Cumbie and Van Horn 1978, Lemly 1985b, Gillespie and Baumann 1986, Hermanutz et al. 1993)" Ps' Ex. 7 at 4. The selenium concentrations in Rum Creek and Slab Fork downstream from Apogee's discharges regularly exceed that 10 µg/l threshold. See, e.g., Ps' Ex. 8 at 8-9 (Apogee's Fourth Quarter 2009 discharge monitoring reports).

Apogee's failure to comply with Paragraph 21.b also harms Plaintiffs by depriving them of information regarding the operational status and treatment effectiveness of Apogee's selenium treatment systems. Such information is necessary for purposes of Plaintiffs' efforts to enforce this Consent Decree, to determine their potential exposure to, and risk of harm from, selenium contamination in receiving waters, and to support Plaintiffs' advocacy on the issue of selenium pollution from surface mines. See American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer

11

Com'n, 389 F.3d 536, 542-46 (6th Cir. 2004) (CWA plaintiffs have informational standing to enforce NPDES permittee's failure to monitor and report its discharges as required by its permit).

## RELIEF REQUESTED

As described above, sanctions for contempt may include coercive imprisonment, per diem fines for continuing disobedience, suspended fines purgeable through timely compliance with a final order, and attorney's fees. International Union, United Mine Workers of Amer., 512 U.S. at 829-30; Cromer, 390 F.3d at 822. In this case, Plaintiffs seek three of those sanctions.

Plaintiffs ask the Court to impose a coercive, per diem fine on Apogee until it achieves compliance with its selenium limits. The amount of that fine should be determined after a hearing and should be set at an amount sufficient to render continuing noncompliance economically infeasible and cost-prohibitive. It should also be sufficient to serve as a deterrent to creating new selenium discharges in violation of the water quality standard by other Patriot surface mines. Until Patriot understands that it will have to pay the true costs of its violations of the law, it will have insufficient incentive to assure than new operations will not discharge selenium in excess of the water quality standards. Plaintiffs also request that the Court set a suspended fine of $100,000, purgeable through timely compliance with an order compelling Apogee to remedy the deficiencies in its status reports. These fines would be payable to the U.S. Treasury or put to use in a Supplemental Environmental Project approved by EPA. Tamaska v. City of Bluff City, 26 Fed. Appx. 482 (6th Cir. 2002)

Moreover, the Court should award Plaintiffs their attorney's fees related to this contempt proceeding. One of the purposes of contempt sanctions is "to compensate the complainant for losses sustained as a result of the contumacy." In re General Motors Corp., 61 F.3d 256, 258 (4th

12

Cir. 1995). Here, Plaintiffs incurred the attorney's fees associated with this contempt proceeding and their opposition to Apogee's motion to delay the compliance deadline. Those fees have been incurred as a direct result of Apogee's refusal to obey the Court's orders. Consequently, it is appropriate to award Plaintiffs' their attorney's fees if their motion is successful. <u>Tamaska, supra; Atlantic States Legal Foundation v. Onondaga Department of Drainage and Sanitation</u>, 899 F. Supp. 84 (N.D.N.Y. 1995).

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for an order to show cause why Apogee should not be found in civil contempt and should impose the sanctions described above.

Respectfully submitted,

**/s/ Derek O. Teaney**
DEREK O. TEANEY (WVSB # 10223)
JOSEPH M. LOVETT (WVSB # 6926)
Appalachian Ctr. for the Econ. & the Envt.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 793-9007
Fax: (304) 645-9008
E-mail: dteaney@appalachian-center.org

JAMES M. HECKER (DCBN # 291740)
Public Justice
1825 K Street, N.W. Suite 200
Washington, D.C. 20006
(202) 797-8600
jhecker@publicjustice.net

**CERTIFICATE OF SERVICE**

I certify that on April 18, 2010, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

>Blair M. Gardner
>Robert G. McLusky
>Thomas J. Hurney, Jr.
>L. Jill McIntyre
>Whitney Clegg
>Jackson Kelly, PLLC
>1600 Laidley Tower
>P.O. Box 553
>Charleston, WV 25322
>*bgardner@jacksonkelly.com*
>*rmclusky@jacksonkelly.com*
>*thurney@jacksonkelly.com*
>*jmcintyre@jacksonkelly.com*
>*wclegg@jacksonkelly.com*

>**/s/ Derek O. Teaney**
>DEREK O. TEANEY
>
>*Counsel for Plaintiffs*